Benjamin F. Johns
Alison G. Gushue
Andrew W. Ferich
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Email: bfj@chimicles.com
Email: agg@chimicles.com
Email: awf@chimicles.com

*Counsel for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT MONTANYE, JASON SABER, JIM and JENI ONEY, h/w, and KELLEY HAGGARD, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LG ELECTRONICS USA, INC., <br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br><br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs Robert Montanye, Jason Saber, Jim and Jeni Oney, h/w, and

Kelley Haggard (collectively "Plaintiffs"), individually and on behalf of all others

similarly situated, bring this class action against Defendant LG Electronics U.S.A.,

Inc. ("LG" or "Defendant") and in support thereof aver the following based upon personal information and the investigation of their counsel.

## INTRODUCTION

1.    This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of similarly situated consumers who purchased LG refrigerators (the "Refrigerators")[1] that suffer from an undisclosed defect which causes widespread compressor and/or related component part (*e.g.* fans, etc.) failures early in the life of the refrigerator (the "Compressor Defect").

2.    LG promised consumers that its Refrigerators would give them "peace of mind" and be long-lasting – specifically due to the features in and technologically advanced nature Refrigerator compressors:

---

[1] As used herein, the term "Refrigerators" refers to at least the following LG model refrigerators: LFX30766S, LMX30778S/01, LFXC24726S, LFX29626, LFX29766S, LFXS30726S, LDCS24223S, LFC21776ST, LFC25765ST, LFX28968ST, LFX28978SW, LFXS32726S, LMX25964ST, LMXC23746S, LMXC23746D, LSXS26326S, LMXS30776S, LFX28978ST, LMX25964SS, LFX25974ST, LFXS29766, LMXS27626S, LFC25776ST, LSXS26326S, LFX2897SB, LFX32945ST, LFXS24623S, LFXS32766S, LFX21976ST, and LFX30766S. Plaintiffs reserve the right to amend or add to models included in the Refrigerators.



## Peace of Mind

When you buy a refrigerator, you don't want to worry that it won't last. Because the
Linear Compressor uses fewer moving parts and operates more efficiently, LG
confidently backs the Linear Compressor with a 10-year limited warranty.




3.      Instead, due to a defect in the Refrigerator compressors and,
consumers routinely come home after a long day at work or returning from
vacation to find all of the food contents from their Refrigerators are spoiled;
everything in the freezer has defrosted and also spoiled; and all of the ice in the in-
door ice maker has melted and leaked out onto the kitchen floor. These food losses
can cost hundreds of dollars or more for consumers. Incidental damages, *e.g.*
damage to or warping of wood floorboard trim and hardwood floors due to leaking
water, cost even more. Worse still, when consumers call LG to complain and seek
a repair, the repairs repeatedly fail and consumers have to pay for labor costs each
time they have a service appointment.

4.      Plaintiffs' experiences with their Refrigerators (detailed below) are all similar, and each of their Refrigerators suffers from the Compressor Defect. The Compressor Defect is the result of a failure in the Refrigerator compressors and cooling system – which may be caused by failures in the Refrigerator ice maker and/or fan – that, when it manifests, renders the Refrigerators unable to perform the essential purpose of keeping food and other items cold. Each Plaintiff and member of the Class has purchased a Refrigerator with this known defect.

5.      The high rate of compressor failures caused by this defect has also created a significant backlog of replacement compressors, forcing Plaintiffs and other consumers to wait unreasonably long periods of time – sometimes many weeks or over a month – for repair and replacement services. These delays clause Plaintiffs and other consumers to incur additional damages in procuring alternate means of refrigeration for their food.

6.      As the numerous complaints posted on product reviews, blogs and other consumer resources reveal, numerous consumers have also experienced compressor failures in their Refrigerators. At all relevant times, Defendant knew of or should have known of the Compressor Defect (discussed below) in the Refrigerators, and failed to disclose it in order to increase their sales of Class Refrigerators.

7. The Compressor Defect causes the Refrigerators to cease cooling without warning. This typically happens early on in the useful life of the Refrigerators, within the first 2-4 years. The Compressor Defect results in the spoliation of food, beverages, and other products in the Refrigerators, as well as loss of Refrigerator function until the compressor is able to be replaced.

8. When repairs are made, they are unreliable, and consumers routinely experience repeat failures, and thus repeated loss of the expensive value of food in their Refrigerators, as well as repeated loss of use of the Refrigerators.

9. LG's limited warranty does not cover labor costs beyond the first year for compressor replacements. Labor costs alone for compressor repairs and replacements often exceed $500. Moreover, even where LG covers the cost of replacement parts, consumers are often subjected to significant delays due to much needed parts consistently being backordered.

10. As a result of concealment of the Compressor Defect and the monetary costs associated with repairs and repeated repairs, Plaintiffs and Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendant's conduct.

11. Accordingly, Plaintiffs seek redress for Defendant's violations of state and federal consumer protection laws and breaches of warranty. Plaintiffs also seek recovery for monetary and equitable relief.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) because at least one plaintiff and defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this district, are subject to personal jurisdiction in this district, and are therefore deemed to be citizens of this district. Additionally, Defendant has advertised in this district and has received substantial revenue and profits from sales of Class Refrigerators in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

14.    This Court has personal jurisdiction over Defendant because LG has conducted substantial business in this judicial district and intentionally and purposefully placed the Class Refrigerators into the stream of commerce within this district and throughout the United States. Furthermore, LG has a principal place of business and headquarters located within this judicial district.

# PARTIES

**A.**   **New Jersey Plaintiff**

**Plaintiff Robert Montanye**

15.    Plaintiff Robert Montanye is an adult individual residing in Brick, New Jersey. In 2015, he purchased an LG Refrigerator (Model No. LMXS30776S) from Sears in Brick Township, New Jersey.

16.    In or about spring 2017, Plaintiff Montanye noticed that the ice in his freezer was no longer freezing and was melting. Furthermore, all of the contents in his refrigerator were warm. This was because the compressor in his Refrigerator had failed, causing the cooling mechanisms in his Refrigerator to not function properly.

17.    Plaintiff Montanye contacted LG customer service for assistance with this issue, but LG informed him that his Refrigerator was no longer covered under the 12-month limited warranty. Plaintiff was told that he would be responsible for any repair or labor costs.

18.    Plaintiff was told that if it was the compressor that went bad, LG would pay for the compressor part but nothing else.

19.    Because Plaintiff Montanye was out of warranty, he contacted a local repair shop. He was told that all of the repairs would be approximately $900.

20.     Without a functioning Refrigerator, Plaintiff Montanye has been forced to use a fridge located in his RV, as well as another smaller fridge in his house. Furthermore, due to the Refrigerator failing, approximately $250-300 worth of food was spoiled.

21.     To date, Plaintiff Montanye has not been able to repair his defective Refrigerator due to the exorbitant cost.

22.     Plaintiff Montanye has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Compressor Defect. Plaintiff Montanye would not have purchased his Class Refrigerator had he known that it contained the Compressor Defect.

**B.    <u>New York Plaintiff</u>**

**Plaintiff Jason Saber**

23.     Plaintiff Jason Saber is an adult individual residing in Syosset, New York. In or about August 2014, he purchased an LG Refrigerator (Model No. LFXC24726S) from Appliance World in Huntington, New York. The Refrigerator was delivered in November 2014. Plaintiff Saber paid approximately $2,697 for his Refrigerator.

24.     Within the first few months after purchasing his Refrigerator, the ice maker stopped working. Plaintiff Saber called LG to complain about this issue and LG dispatched a service technician to replace the board in the unit.

25.    On or about December 16, 2016 – approximately two years after purchasing his Refrigerator – Plaintiff Saber noticed that water was leaking from his Refrigerator and onto the floor of his home. He discovered that the leak originated in the freezer, specifically in the ice maker, where the ice was starting to melt.

26.    Plaintiff contacted LG about this issue and LG engaged in remote diagnostic using technology in the Refrigerator. LG avoided making a determination as to what the actual issue was, and told Plaintiff that he should make sure to keep the Refrigerator doors closed. After that, water kept dripping out of the ice maker, the Refrigerator began to get warm, and everything in the freezer had defrosted.  This was the result of the Refrigerator experiencing the Compressor Defect.  All of Plaintiff's food was spoiled (roughly $200 worth).

27.    Plaintiff called LG service on or about December 17 to complain and they ran diagnostics again, but nothing came up and Plaintiff was told that everything seemed fine. Plaintiff requested that a service technician be dispatched for repair, which LG agreed to do. At this time, Plaintiff was out of warranty.

28.    LG recommended Petro Home Services to Plaintiff. Following an inspection by Petro, the repair technician concluded that the issue was a defective compressor.

29.    Plaintiff Saber sought warranty coverage for this Refrigerator failure but because the warranty period had expired, Plaintiff was forced to pay $558.48 out-of-pocket for the repairs, which included labor costs.

30.    The repair was also not promptly performed due to the fact that the replacement part (*i.e.* the compressor) had been on backorder.

31.    Plaintiff put a in a service request with Petro on December 19, and the replacement part was not received and installed until December 29.  Plaintiff lost use of his Refrigerator for approximately ten days, including during the Christmas holiday during which time Plaintiff was supposed to host Christmas Eve dinner for 15 people.  Due to the failed Refrigerator, Plaintiff Saber had to cancel this holiday dinner.

32.    Plaintiff Saber has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Compressor Defect. Plaintiff Saber would not have purchased his Class Refrigerator had he known that it contained the Compressor Defect.

**C.**    **Texas Plaintiff**

**Plaintiffs Jim and Jeni Oney**

33.    Plaintiffs Jim and Jeni Oney are adult individuals residing in Frisco, Texas. In or about September 2015, Plaintiffs purchased an LG Refrigerator

(Model No. LMX30778S/01) from Nebraska Furniture Mart in The Colony, Texas. Plaintiffs paid $4,140.49 for their Refrigerator.

34.    In August 2016, Plaintiffs noticed that the ice maker in the Refrigerator stopped working. They put in a service call with LG and, at the time, their Refrigerator was still in warranty

35.    By the time LG dispatched a service technician, the issues escalated and the Refrigerator had stopped working as a result of the Compressor Defect.

36.    After performing an inspection, the service technician said there was something "major" wrong with the Refrigerator, but Plaintiffs never heard from this particular technician again. They called LG, which dispatched another company called Premier. Due to this failure, Plaintiffs decided to purchase a separate freezer for $548.50 and, more recently, another refrigerator for $588.88. In addition, roughly $500 of food was lost in this particular instance.

37.    After performing this inspection, Premier replaced the board in the Refrigerator, and the unit began working again. However, within a few more days, the Refrigerator failed again, and Plaintiffs once more lost all of their food (roughly $500 more). Premier was dispatched a second time, and concluded that there was a compressor failure. By the time the part arrived and was installed, it was November 2016.    Premier replaced Plaintiffs' compressor and the Refrigerator began working once more.

38.    A few months later, on or about March 6, 2017, the Refrigerator failed yet again. At the time, it was Plaintiff Jeni Oney's birthday and Plaintiffs were hosting a party. They ended up having to go out for food because all of their food was lost (roughly $800 more). Once again, Plaintiffs called LG to complain and LG acknowledged there is an issue with its refrigerators. LG provided Plaintiffs with a one-time extended warranty and sent out a repair company called Callahan's Appliance.

39.    During the service appointment, Callahan's acknowledged that "this is a known problem" with LG compressors, that LG knows it is a defect, and stated that LG should recall the Refrigerators. Callahan's said it costs more for them to replace the parts than LG will pay them, so Callahan's did not make any repair for Plaintiffs.

40.    Plaintiffs contacted LG to complain, and LG sent out Premier again. Each time Plaintiffs experienced failure, it would take weeks between the time when they called LG and when a repair was actually completed. In this particular instance, it was another three weeks before repairs were made. At this point, it was the end of March 2017, and Premier concluded that the compressor was bad, but stated that LG will not allow compressor repairs or replacements without first attempting to make other obscure part replacements or fixes.

41.    Ultimately, Premier replaced the compressor yet again in early July 2017. Once again, the repairs failed. Plaintiffs called LG to escalate the issue and indicated they wanted a new Refrigerator, but LG refused to do so until an LG service person (*i.e.* a customer service agent who has not has not looked at the fridge) says that it is unfixable. The actual service technicians who are dispatched all reach the same conclusion: they have told Plaintiffs that they are not sure that compressor repairs or repairs/replacements of other parts will fix the issue, but that they simply "do what LG tells us to do."

42.    Currently, Plaintiffs are awaiting service for compressor number four. They have not had a functional Refrigerator since March of 2017, and they have been experiencing frequent disruption of and loss of use since August of 2016.

43.    Due to repeated Refrigerator failures, Plaintiffs have lost, *inter alia*, roughly $1800 in spoiled food, months of lost off use, have spent 15-20 hours on the phone with LG and service repair technicians, have spent multiple hours dealing with service appointments which required taking off from work and loss of pay, and Plaintiffs were eventually forced to purchase an expensive separate freezer.

44.    The Oney Plaintiffs have suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Compressor

Defect. Plaintiffs would not have purchased their Class Refrigerator had they known that it contained the Compressor Defect.

### D.    Utah Plaintiff

#### Plaintiff Kelley Haggard

45.    Plaintiff Kelley Haggard is an adult individual residing in Salt Lake City, Utah. Plaintiff Haggard purchased an LG Refrigerator (Model No. LMXS30776S) on or about September 12, 2015. Plaintiff Haggard paid $2,029.08 for his Class Refrigerator. Plaintiff bought his Refrigerator from RC Willey.

46.    Plaintiff's Refrigerator operated fine until May 2017, when the first sign of failure appeared. At first, the Refrigerator stopped making ice. Plaintiff Haggard used a thermometer to determine that the temperature in the refrigerator was only 42 degrees with the temperature set at 36 degrees Fahrenheit, and the freezer temperature was 21 degrees Fahrenheit although set to 0 degrees.

47.    Plaintiff called LG to ask about the warranty and learned that the warranty was 12 months for labor, 10 years for the compressor, and 7 years for the evaporator and condenser. As he was out of warranty for labor and repair, LG referred Plaintiff to the out-of-warranty department where he was offered a 12-month labor plan for $454.57. Plaintiff purchased this plan and proceeded to get a service technician appointment scheduled.

48.    LG dispatched Total Appliance out of Bountiful, Utah for a service appointment at Plaintiff's house. The technician diagnosed the problem to be a compressor failure and he scheduled another appointment for a refrigerant technician to come and verify the problem. Another technician came the following week and said that the compressor was bad and that he would have to order the parts necessary to repair the Refrigerator. A new compressor, control board, and dryer were eventually installed in the Refrigerator, approximately a few weeks later. The initial compressor that was ordered wound up being an unusable from the outset, so a second compressor had to be ordered.

49.    After the replacement compressor was finally installed, Plaintiff was told it would take 24 hours for the Refrigerator to cool down and operate properly.

50.    Instead, it took approximately 72 hours before the Refrigerator began to get colder but it never reached its set cooling points. Plaintiff called Total Appliance again and was informed that Plaintiff needed to schedule another appointment through LG. Plaintiff again called the out-of-warranty department (through Assurant) at LG, and they issued a new service call for the technician to come and verify if the Refrigerator could be repaired. The warranty department explained that if the Refrigerator could not be repaired, they would refund part of the initial purchase and the contract would be finished.

51.    When Plaintiff called the out of warranty department/service provider at Assurant, he was told to call LG and cancel his extended warranty package, which he did. LG told him that if he did so he would receive a refund for his Refrigerator. Inexplicably, after Plaintiff did this, he sought a refund, but was told that one would not be provided because he had cancelled his extended warranty service.

52.    Plaintiff has gotten the run-around from LG and the out-of-warranty service provider, and has yet to obtain an adequate repair or a replacement. Plaintiff has been left with a Refrigerator that does not cool properly or as advertised, and which failed roughly 20 months after purchase. To date, LG has failed to provide an adequate remedy for the Compressor Defect in Plaintiff's Refrigerator.

53.    As a result of the Compressor Defect, Plaintiff experienced multiple weeks of loss of use of his Refrigerator. He has also spent approximately 10-15 hours of time dealing with calls to LG, service technicians, and actually being present for service appointments.

54.    Plaintiff Haggard has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Compressor Defect. Plaintiff Haggard would not have purchased his Class Refrigerator had he known that it contained the Compressor Defect.

E.    **Defendant**

55.    Defendant LG Electronics U.S.A., Inc. is, upon information and belief, a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Defendant markets, distributes and sells the Refrigerators throughout the United States, including in New Jersey. On information and belief, all significant decisions concerning the design, marketing and sale of the Refrigerators at issue were made at Defendant's New Jersey headquarters. Defendant proximately caused Plaintiffs and all others similarly situated to be subjected to the unlawful practices, wrongs, complaints, injuries, and/or damages alleged in this complaint.

## FACTUAL ALLEGATIONS

A.    **Refrigerator Cooling Functions and Compressors**

56.    Compressors are the primary component of the cooling function in refrigerators. They operate to constrict refrigerant vapor, raising the refrigerant pressure, and pushing the vapor into the coils on the outside of the refrigerator. When the hot gas in the coils meets the cooler air temperature for the surrounding area, it becomes a liquid.  In liquid form, the refrigerant cools down as it flows into the coils inside of the freezer and the refrigerator. The refrigerant acts to absorb the heat inside the refrigerator, cooling down the internal air. The refrigerant then

- 17 -

evaporates into a gas, flows back to the compressor, and the cycle repeats. A diagram demonstrating this process is below:



57.    The compressor is the heart of a refrigerator's operating system. When a compressor in a refrigerator fails, the cooling functions do not work in the refrigeration and the freezer units. Obviously, this results in defrosting, melting, and food spoliation. Essentially, a refrigerator that has a defective or non-functioning compressor is useless for cooling and freezing food. Failed compressors can lead to thousands of dollars in losses between the monetary loss

of spoiled food and other items in the refrigerator and freezer along with the costs of repair (parts and labor) to fix a failed compressor.

**B.    The Compressor Defect in the LG Refrigerators**

58.    The Class Refrigerators are manufactured, distributed and/or sold by LG. Upon information and belief, LG does not directly sell Class Refrigerators. Instead, consumers purchase Class Refrigerators through big box or chain retail stores such as Sears, Best Buy, Home Depot; via websites online; and at smaller home appliance stores. Prices for the Class Refrigerators range vary, with some being offered for roughly $1,500 while other models are available for over $3,000.

59.    Unbeknownst to consumers, the Class Refrigerators all suffer from the same latent defect—the Compressor Defect—that inevitably causes the compressors in the Refrigerators to fail.  This, in turn, cases the Refrigerator itself to fail to maintain interior temperature of both the fridge and freezer sections.

60.    The Class Refrigerators experience uniform operational problems due to the Compressor Defect and faulty operational/cooling systems which causes Class Refrigerators to fail well in advance of the expiration of their anticipated useful life.  All Class Refrigerators are plagued by this same uniform defect.

61.    Consumers become aware that their Refrigerator has failed when they discover increased temperatures in either their refrigeration or freezer unit. In many cases, this happens when consumers come home to find that all of their

frozen foods are defrosted, their refrigerated food has spoiled, or that their ice maker has stopped working and melted ice has leaked onto the kitchen floor.

62.     The compressors in the Refrigerators routinely fail slightly after LG's one-year warranty period expires, although some consumers report early failure within warranty – often first signaled by the failure of the ice maker in the Refrigerator's freezer section.

63.     When the Refrigerator fails outside of the one-year warranty period, consumers are left to pay for all costs on their own.

64.     LG's 12-month Refrigerator warranty is reproduced below:

# WARRANTY (USA)

Should your LG Refrigerator ("Product") fail due to a defect in materials or workmanship under normal home use, during the warranty period set forth below, LG will at its option repair or replace the product. This limited warranty is valid only to the original retail purchaser of the product and applies only when purchased and used within the United States including U.S. Territories. Proof of original retail purchase is required to obtain warranty service under this limited warranty.

| WARRANTY PERIOD | | | |
|---|---|---|---|
| Refrigerator | Sealed System (Condenser, Dryer, Connecting Tube and Evaporator) | | Linear Compressor |
| One (1) year from the date of original retail purchase | One (1) year from the date of original retail purchase | Seven (7) years from the date of original retail purchase | Ten (10) years from the date of original retail purchase |
| Parts and Labor (internal/functional parts only) | Parts and Labor | Parts only (Consumer will be charged for labor) | Part only (Consumer will be charged for labor) |

Noises associated with normal operation and failure to follow instructions found in the use and care and installation guides or operating the unit in an unsuitable environment will not be covered under this warranty.

▶ Replacement products and parts are warranted for the remaining portion of the original warranty period or ninety (90) days, whichever is greater.

▶ Replacement products and parts may be new or remanufactured.

THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TO THE EXTENT ANY IMPLIED WARRANTY IS REQUIRED BY LAW, IT IS LIMITED IN DURATION TO THE EXPRESS WARRANTY PERIOD ABOVE. NEITHER THE MANUFACTURER NOR ITS U.S. DISTRIBUTOR SHALL BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL, OR PUNITIVE DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, LOST REVENUES OR PROFITS, OR ANY OTHER DAMAGE WHETHER BASED IN CONTRACT, TORT, OR OTHERWISE. Some states do not allow the exclusion or limitation of incidental or consequential damages or limitations on how long an implied warranty lasts, so the above exclusion or limitation may not apply to you. This warranty gives you specific legal rights and you may also have other rights that vary from state to state.

65.     Despite that the Refrigerator compressors are covered by a 10-year warranty, when consumers (like the Oney Plaintiffs, for example) demand a compressor replacement, they are often told by LG-dispatched service technicians

that they will not replace or repair the compressor even though the representative believes the problem emanates from the compressor. Some consumers report that service technicians refuse to do the job altogether because LG pays them less than what it actually costs the technician to complete the repair(s).

66.    Furthermore (as also reported by the Oney Plaintiffs), attempted repairs – including replacement and repair of Refrigerator compressors, boards, or other components – routinely fail to resolve the problem with the Refrigerators, necessitating multiple service appointments and repair attempts. Because labor is not covered under the warranty for compressors after the first year, consumers must absorb the repeated labor costs associated with repeat service appointments.

67.    Accordingly, the limited remedy of repair and replacement under LG's warranty (including for its compressor warranty) fails of its essential purpose.

68.    In sum, LG's response to this issue when it manifests in consumers' Refrigerators is to either (a) decline to provide the repair that is actually needed, *i.e.* compressor replacement, (b) provide a series of unsuccessful in-warranty repairs (for which labor costs are still paid by consumers), or (c) deny any repair if the Refrigerator is out of warranty, leaving consumers to handle the Compressor Defect on their own.

69.    When repairs are provided, consumers are left for weeks without use of their Refrigerator because it ordinarily takes a number of weeks (in some cases up to a month) for LG to dispatch a service technician and for the technician to obtain the part(s) needed for repairs. Indeed, consumer complaints and service technicians report that parts are backordered for Class Refrigerators due to the high volume of Refrigerator failures because of the Compressor Defect.

70.    Regardless of how LG responds, what is clear is that it does not provide any permanent solutions for a defect of which it is well aware. Consumers have experienced and continue to experience repeated compressor failures because the compressor in Class Refrigerators is defective. To date, LG has not remedied the Compressor Defect.

71.    When the Refrigerators fail, not only are consumers forced to incur the costs of labor and repairs, but they suffer numerous other losses including, *inter alia*: loss of food (and the associated monetary value); disruption and loss of use of their Refrigerators; lost time spent on service calls and service appointments; missed work and loss of wages due to attendance at service appointments; out of pocket expenses incurred for the purchase of separate refrigeration and freezer units that would otherwise be unnecessary but for the Compressor Defect and failures in the Refrigerators; and other property damage resulting from leaking or melting, *e.g.* damaged hardwood floors from melted ice.

72.    As above, numerous consumer complaints visible through internet research make clear that LG and the service technicians it dispatches to try to fix this issue have failed to adequately eliminate the Compressor Defect, thus necessitating (in many cases) multiple repairs and replacements. This leaves consumers in a position where they are left wondering when the inevitable will happen such that they will come home to find that their Refrigerator has again failed.

### C.    The Compressor Defect's Impact on Similarly Situated Consumers

73.    Plaintiffs' experiences with failing Refrigerators and the Compressor Defect are by no means isolated occurrences.

74.    The internet is replete with complaints by consumers who purchased an LG Refrigerators, only to experience the same compressor problem.  Examples of some of these complaints are below:

**Facebook:**



Andrea Popa Nelson ▸ LG Electronics USA ✓
12 hrs · 🌐

I would just like to say how horrible LG is. I purchased their refrigerator in
Feb 15. When we came home from a week long vacation in California I
found my fridge had died, leaving the ice to melt all over our hardwood
floors. This resulted in warping of the planks. The estimated cost of repair to
the floor is $6,000 because of the open floor plan of our home. This is in
addition to all the food (2 giant roller garbage cans) of food we had to throw
away. I called and had to purchase an out of warranty policy before they
would come out to look at the fridge (almost $400). They scheduled that for
Wed (I called on Sun). I waited 6 hours for the service person to arrive only
to have my floors further damaged by dragging the fridge out. He said he
would be unable to fix it because the compressor had gone out and I would
need another appointment on Saturday to do the 3 hr repair. We waited
from 12-almost 5 for the service to be completed. The fridge produced ice
one time and by the following week it was doing the same thing. Ice was
melting, fridge was warming, food was no good. I was warned by LG
service tech that I shouldn't put more than a days worth of food in it
because they have known compressor design problems. I call again. Wait 3
more days. Wait 2 more hours for tech to arrive. He works a few hrs and
leaves (Fri). It makes ice for one day, husband and I go to grocery store
(Sun) only to come home and find ice melting again. Call customer service
again. Scheduled for that Thursday. Babysitter waits. Fridge is "fixed" 3rd
time. Came home 5 days later. Repeat cycle. I'm sick of being on hold. I'm
sick of eating out. I'm sick of hearing I'm sorry from your service team! I do
not want another service appt ruining my time. I do not want to spend more
time on hold. I am over your product!

2

---

2 https://www.facebook.com/LGUSA/posts/1407890065927190 (last visited July
28, 2017)

 **Melissa Tyler** ▸ LG Electronics USA ✓

October 5, 2016 · Avon, OH · 🌐

Do not EVER waste your money on an LG Refrigerator! Our very expensive LG refrigerator turned 1 year old on 7/15/16. On 8/5/16 I woke up to it being completely warm. Hundreds of dollars of food ruined! It took over a week for LG to get a repairman to my house, and since they were "generous" enough to provide that for free (which I was told by a supervisor they always do one time, regardless of how long it's been out of warranty) I was told there was nothing they could do about the food loss. Repairman replaced the fan and said it was fixed. A few days later (after restocking the fridge) we went on vacation. A week later we returned to a house smelling off rotten chicken. The refrigerator was once again room temp. Hundreds more in food...gone. When the repairman came, he had no idea what the issue was, so he replaced the whole compressor. Assured me this would fix it. Here I am, 2 months later with a warm fridge AGAIN! I am now out over $600 in food losses, and many hours waiting for repairmen/on the phone. I have two young children and have to constantly smell the milk and other items to be sure they haven't spoiled due to the refrigerator randomly turning off. When I asked the supervisor "at what point do you just call it a lemon and replace it???" She simply said, "we aren't there yet." So here I sit...again...waiting for a repairman on a refrigerator that is barely 1 year old 😡😡😡😡

3

 **Susan Stidham Dobbs** ▸ Lg Appliances

July 19 at 1:06pm · 🌐

Our TWO YEAR OLD fridge went out June 3rd. Today, 48 DAYS LATER, we FINALLY got it fixed. That's 48 days without a fridge in the middle of summer!! The part was under warranty but the labor was not. After numerous aggravating phone calls, we were told LG would pay the $450 compressor installation. Well, guess what - they didn't!! DO NOT PURCHASE LG APPLIANCES!!! They owe money to the repair service we used and their customer service is the WORST!! There is no way a 2 year old compressor should have failed. #LGBUYERBEWARE

4

---

[3] https://www.facebook.com/LGUSA/posts/1094584970591036 (last visited July 28, 2017)

**ConsumerAffairs:**

 Tracy of New Windsor, NY on July 7, 2017

Satisfaction Rating


Purchased an LG Refrigerator only 2 years ago, compressor has already failed. Been without refrigerator for nearly five weeks because of constant run around from LG (also purchased the extended warranty), had two different repair companies (both sent from LG as certified company to do repair) and bottom line is the parts are not available because of the multitude of Compressor failures. It will be at least two months before a compressor is through production and shipped from Korea.

For all of you experiencing compressor failure PLEASE CONTACT THE FEDERAL TRADE COMMISSION AND YOUR STATE ATTORNEY GENERAL'S OFFICE. This is obviously a recall situation but they won't do that. For all of you being told your repairman can't fix your refrigerator, that is not true, there simply are no parts available and when that is the case LG is in breach of their warranties and would be forced to issue you a refund or replace on your purchase, they are giving you the run around to avoid having to pay. DON'T LET THEM GET AWAY WITH IT, KEEP THE PRESSURE ON.

*Helpful?*  Yes | No

5

 James of Fremont, CA on July 11, 2017

Satisfaction Rating


Contacted LG customer service for repairing compressor since compressor is still under warranty. Initial contact asked me to give them 48 hours for response. There was no response. Call them again, they give us local LG service support, about 20 contacts, but none of them willing to do the job. Contacted the customer service again (3rd time), their response was to have us wait for 3 days so that they can try to contact the technician themselves. No response after 3 days so contacted them again. The person who answered the phone give us the same technicians to contact. Frustrated, I asked the customer rep to forward my call to his supervisor but he refused. He also seem to be at a loss for word on how to resolve the issue. I filed a complaint with BBB.

*Helpful?*  Yes | No

6

---

4 4

https://www.facebook.com/permalink.php?story_fbid=1854291361502468&id=1460075364257405 (last visited July 28, 2017)
5 https://www.consumeraffairs.com/homeowners/lg_refrigerator.html?page=1 (last visited July 28, 2017)

**Twitter:**



---

[6] *Id.*  (last visited July 28, 2017)
[7] https://twitter.com/MarnieMarnieab/status/814243758841556992 (last visited July 28, 2017)
[8] https://twitter.com/subpeaksurfer/status/766740708866654208 (last visited July 28,2017)

## Complaints about LG Refrigerator Model No. LMXS30776S

## Amazon:

★☆☆☆☆ Cooling goes bad within first 1 to 2 years

By MC on July 13, 2017

Verified Purchase

This unit stopped cooling after 1.5 to 2 years. Seller is refusing return of this defective item, but from my point of view, I spent 3.5 K for this unit, only to see it not working in such a short duration. My previous fridge worked flawlessly for 10 plus years, and was one quarter the price.
Very disappointed. All food is currently going bad in a day or so.

▸ Comment | 2 people found this helpful. Was this review helpful to you? Yes No Report abuse

**9**

★☆☆☆☆ Stay Away

By James R Garbacz on May 31, 2017

We have had this refrigerator for a little over 2 years. It worked great until about a month ago. It stopped cooling. We contacted LG and they had us unplug it and plug it back in. That worked, for a day. Then it stopped cooling again. We contacted LG again, and they gave us 2 authorized service providers in our are (Chicago Suburbs). The first wouldn't service our area. The second came out right away. They diagnosed the issue as a sealed system problem. The charge, $700 for the labor, the parts were under warranty. So we have them order the parts, and the refrigerator starts working again. The service company says it can't be the sealed system if it's at temperature. The refrigerator does this a few more times, cools for a few days, then stops cooling. They come out and look at it again. They contact LG, who have no idea what the issue is. So our choice is to either pay the $700 to replace the sealed system and hope it fixes the issue, or have the tech come out again and see if they can figure it out. This is not what you expect when you pay $3K for a refrigerator just 2 years ago. I would not recommend any LG products after this. And, we are still without a refrigerator.

▸ Comment | 2 people found this helpful. Was this review helpful to you? Yes No Report abuse

**10**

---

9 https://www.amazon.com/gp/customer-reviews/R1B0S4TM51FS50/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B00NFBV86G (last visited July 28, 2017)

10 https://www.amazon.com/gp/customer-reviews/R120NBABEB9OWA/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B00NFBV86G (last visited July 28, 2017)

**ConsumerAffairs:**

 Bill of Livermore, CA on March 22, 2017

Satisfaction Rating


I purchased a $3000 French door LG refrigerator 7/2015 from Best Buy (Model#LMXS30776S) and 20 months later the compressor failed according to the LG authorized repairman ($80 service call). "You need a new compressor. Good news: It is covered by the warranty for 7 years. Bad news: labor is not covered and it will cost you $600." Looking at ConsumerAffairs.com I am in good company. There are 1766 complaints re the LG refrigerators, many about defective compressors failing in less than two years. A call to LG customer service (Philippines) they offered to submit my case for review to cover labor due to their extensive compressor problems and only 20 months old unit. Next day, sorry for the inconvenience, but too bad Charlie, no can do.

The LG refrigerator is a high end pretty box but has an extensive history of maintenance issues that even when corrected do not provide long term results. The cost of repairs is inflated by having to use their authorized repair tech to get the warranted parts, but you pay through the nose for the labor. The availability of the service is often a week out, they need to make two trips because they don't carry the parts, often the parts are not available due to factory back order, and that will generate another $80 service call.

I complained to Michael Finney at 7 On Your Side at (415) 954-8151 to see if they are interested. If you have a similar problem, you might do so also. My Next call is to the Federal Trade Commission and the State Attorney General Office. LG is a South Korean company and their products are marketed by Best Buy, Sears, Home Depot, and Lowe's to mention a few.

I would avoid purchasing anything with a LG label until they get their act together. Read the other complaints on LG refrigerators before you buy to see if you feel comfortable taking a chance on not experiencing a problem. The 5star ratings are almost all from customers that just got their refrigerator, the 1star ratings are like mine by customers that experience warranty problems after just one year. Grrrrrr![11]

**Complaints About LG Refrigerator Model No. LFXc24726S**

---

[11] https://www.consumeraffairs.com/homeowners/lg_refrigerator.html?page=4
(last visited July 28, 2017)

### A.J. Madison:



**Compressor quit after one year** by aharris on 3/28/17

Overall
Rating:     ★☆☆☆☆  1

Recommends: No

Location: Corpus Christi, TX, United States

"So disappointed with this purchase. I owned an LG refrigerator before for about 7 years and had no issues with it. I liked the size and looks of this refrigerator so I purchased it for my new home. I did buy the Home Depot Protection extended warranty and am so glad that I did. The compressor went out exactly one year and 3 weeks from the purchase date. [This review was collected as part of a promotion.] [This review was collected as part of a promotion.]"

Written by a customer while visiting LG

**12**

### LG Website:



★★★★★ LGisNotRecommended · 11 months ago    SWEEPSTAKES ENTRY RECEIVED

I WOULD NEVER RECOMMEND THIS PRODUCT

Compressor went out in under two years. The part is covered by warranty but you will still have to pay hundreds of dollars in service charges to have the part replaced. It makes a person wonder how much of LG business is derived from these service charges.

**Pros:** Style/Design

**No,** I do not recommend this product.

Quality

Features

Value

Helpful? Yes · 0 | No · 0 | Report                           Comment

**13**

---

[12] https://www.ajmadison.com/cgi-bin/ajmadison/LFXC24726S.html (last visited July 28, 2017)

[13] http://www.lg.com/us/refrigerators/lg-LFXC24726S-french-3-door-refrigerator (last visited July 28, 2017)

**D.    LG's Knowledge and Concealment of, and Continued
Failure to Remedy, the Compressor Defect
<u>and Related Refrigerator Failures</u>**

75.    LG has, at all relevant times, been aware of the defect alleged herein, or is/has been reckless in not knowing thereof. The above consumer complaints are only a small sampling of the thousands of complaints posted on the internet or otherwise made by consumers relating to the Compressor Defect in Class Refrigerators and related failures. Many complaints can even be viewed on LG's own website. Furthermore, LG has upon information and belief fielded thousands of calls from consumers complaining about the Compressor Defect and LG repeatedly informs consumers that replacement compressors and parts are not available due to a backorder. LG cannot credibly deny knowledge of the Compressor Defect.

76.    Despite the fact that LG knows of the compressor failures and Compressor Defect in Class Refrigerators, it conceals and fails to disclose this defect to consumers in sales materials and in documents accompanying the purchase of Refrigerators.  It also routinely fails to pay for the costs associated with repairs and other incidental losses when the defect manifests. Consumers routinely and systematically are denied effective assistance, remedy, or a replacement/refund from LG when they contact LG to complain about the defect.

77.    LG had a duty to disclose the Compressor Defect based upon its exclusive knowledge of the Compressor Defect – a material fact that, had it been disclosed to consumers (including Plaintiffs), would have resulted in consumers not purchasing their Class Refrigerators. Indeed, LG had exclusive knowledge of the defect in the Refrigerators.

78.    As a result of the Compressor Defect and LG's refusal to adequately address and remedy it, consumers across the United States have paid and continue to pay large sums of money out of pocket to repair the Compressor Defect in Class Refrigerators or to obtain a replacement Refrigerator.

79.    In addition, the Compressor Defect has caused numerous consumers to experience loss of use of their Class Refrigerators and loss in value of the Refrigerators

80.    Under these circumstances – LG's superior bargaining power, exclusive knowledge of the Compressor Defect, cost of compressor repairs relative to the cost of the Refrigerator itself, and failure to disclose the same – any attempt to limit the warranty periods in LG's Class Refrigerator warranty(ies) in duration or otherwise is unenforceable as procedurally and substantively unconscionable.

81.    Furthermore, LG's warranty(ies) for the Refrigerators and any exclusive remedy claimed to exist thereunder fails of their essential purpose

because consumers are routinely unable to get an adequate repair or remedy for the Compressor Defect in the Refrigerators. Indeed, consumers routinely report that they experience successive Refrigerator failures despite attempted repairs. Reports also indicate that due to the large number of consumers who have experienced Refrigerator failure related to the Compressor Defect, replacement compressors and compressor parts for Class Refrigerators are on backorder, leaving consumers without a means of refrigeration for weeks or months when their Refrigerators experience the Compressor Defect.

## CLASS ACTION ALLEGATIONS

82.    Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class:

### Nationwide Class

All persons or entities in the United States who purchased an LG Refrigerator with the Compressor Defect.

83.    In the alternative, Plaintiffs seek to represent the following state sub-classes:

### New Jersey Class

All persons or entities in the state of New Jersey who purchased an LG Refrigerator with the Compressor Defect.

**New York Class**

All persons or entities in the state of New York who purchased an LG Refrigerator with the Compressor Defect.

**Texas Class**

All persons or entities in the state of Texas who purchased an LG Refrigerator with the Compressor Defect.

**Utah Class**

All persons or entities in the state of Utah who purchased an LG Refrigerator with the Compressor Defect.

84.    The classes are collectively referred to as the "Class." Excluded from the Class are LG, its affiliates, subsidiaries, parents, successors, predecessors, any entity in which LG or its parents have a controlling interest; LG's current and former employees, officers and directors; the Judge(s) and/or Magistrate(s) assigned to this case; any person who properly obtains exclusion from the Class; any person whose claims have been finally adjudicated on the merits or otherwise released; and the parties' counsel in this litigation. Plaintiffs reserve the right to modify, change, or expand the Class definitions based upon discovery and further investigation.

85.    **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and/or third parties and

obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that tens of thousands of Refrigerators with the Compressor Defect have been sold across the country.

86.    **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a)    Whether the Refrigerators are defective in that they were prone to failing prematurely due to the Compressor Defect;

b)    Whether Defendant knew of the Compressor Defect but failed to disclose the problem and its consequences to consumers;

c)    Whether a reasonable consumer would consider the Compressor Defect to be material;

d)    Whether Defendant's conduct violates state consumer protection laws and other laws as asserted herein;

e)    Whether Plaintiffs and the other Class members overpaid for their Refrigerators as a result of the Compressor Defect alleged herein;

f)    Whether Defendant's conduct was fraudulent;

g)    Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

h)    Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

87.    **Typicality**: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein.  Plaintiffs and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class members.  Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct as described herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

88.    **Adequacy:** Plaintiffs are adequate representatives for the Class because their interests do not conflict with the interests of the Class that they seek to represent; Plaintiffs have retained counsel competent and highly experienced in complex class action litigation – including consumer fraud class action cases –

and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

89.    **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and all Class members. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Defendant. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, the records (including databases, product registration, e-mails, etc.) Defendant maintains regarding sales of Class Refrigerators. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

90.    Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

91.    Given that Defendant has engaged in a common course of conduct as to Plaintiffs and the Class, similar or identical injuries and common law and statutory violations are involved and common questions far outweigh any potential individual questions.

## CAUSES OF ACTION

### COUNT I
**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**
**FOR BREACHES OF EXPRESS AND IMPLIED WARRANTIES**
**15 U.S.C. §§ 2301, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

92.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

93.    This claim is pled on behalf of Plaintiffs and the Nationwide Class.

94.    The Refrigerators are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

95.    Plaintiffs and the other members of the Classes are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

96.    LG is a "warrantor" and a "supplier," as those terms are defined in 15 U.S.C. §§ 2301(4) and (5), respectively.

97.    Defendant provided Plaintiffs and Class members with "express warranties" as that term is defined by 15 U.S.C. § 2301(6).

98.    Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

99.    LG's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Class Refrigerators' implied warranties are accounted for under Section 2301(7) of the MMWA, which warranties LG cannot disclaim under the MMWA, when it fails to provide merchantable goods.

100.    As set forth herein, LG breached its warranties with Plaintiffs and Class members.

101.    Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

> [T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor.

*Id.*

102.   The Class Refrigerators share a common defect in that the compressors are prone to failure and are incapable of being repaired.

103.   Despite demands by Plaintiffs and the Class for LG to pay the expenses associated with diagnosing and repairing the Compressor Defect, LG has refused to do so.

104.   LG breached these specific warranties as described in more detail above and also breached them generally: by manufacturing defective Refrigerators plagued with the Compressor Defect; by manufacturing Refrigerators that are defective in materials and workmanship and are likely to fail; by selling defective Class Refrigerators in merchantable condition, which present an unreasonable risk of failure and are unfit for the ordinary purpose; by refusing to repair or replace, free of charge, the defective Refrigerators or any of their component parts; by failing to provide adequate repairs or replacement products or parts; by forcing consumers to pay for out-of-pocket costs for diagnostics, labor, repair, and replacement parts; and by not curing the Compressor Defect once it was known and identified.

105.   Plaintiffs' and Class members' interactions with LG suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and LG, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third-party

- 41 -

beneficiaries of contracts between LG and its authorized dealers, and specifically, of LG's implied warranties. LG's dealers are intermediaries between LG and consumers that sell Class Refrigerators to consumers and are not consumers of Class Refrigerators, and therefore have no rights against LG with respect to Plaintiffs and Class members' purchases of Class Refrigerators. LG's warranties were designed for the benefit of consumers who purchased Class Refrigerators.

106.    Any efforts to limit LG's warranty for the Refrigerators is unconscionable. There was unequal bargaining power between the Defendant, on the one hand, and Plaintiffs and the other Class members, on the other hand. Further, Defendant knew that the Refrigerators were defective and likely to fail shortly after the warranties purportedly expired. Defendant failed to disclose the Defect to Plaintiffs and the other Class members.

107.    As a direct and proximate result of LG's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be proven at trial.

108.    Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Refrigerators but did not receive the return of all payments made by them. Because LG is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs

and the other Class members have not re-accepted their Class Refrigerators by retaining them.

109.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

110.   Plaintiffs and Class members are entitled to recover damages as a result of LG's breach of warranties.

111.   Plaintiffs and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, the State Sub-Classes)**

112.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

113.   This claim is pled on behalf of Plaintiffs and the Nationwide Class, or, in the alternative, on behalf of the New Jersey, New York, Texas, and Utah Classes under the laws of those states.

114.   Pursuant to Uniform Commercial Code ("U.C.C.") § 2-313, an affirmation of fact, promise, or description made by the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain creates an

express warranty that the goods will conform to the affirmation, promise, or description.

115.   LG is a "merchant" and the Class Refrigerators are "goods" as defined under the U.C.C.

116.   The LG Refrigerators are accompanied by a limited warranty that provides the following in pertinent part:

> Should your LG Refrigerator ("Product") fail due to a defect in materials or workmanship under normal home use, during the warranty period set forth below, LG will at its option repair or replace the product.
> WARRANTY PERIOD
>
> **Refrigerator: One (1) year from the date of original retail purchase:** Parts and Labor (internal/functional parts only)
> ***
> **Linear Compressor: Ten (10) years from the date of the original retail purchase:** Parts only (Consumer will be charged for labor)

117.   LG breached its warranty by selling to Plaintiffs and Class members Class Refrigerators with the Compressor Defect which LG knew and knows makes Class Refrigerators susceptible to failure within and just outside of the warranty period, and which causes the Refrigerators to fail prematurely and well before the expiration of the Refrigerators' useful life, and/or fail to function properly.

118.   LG further breached its warranty by failing to adequately repair and/or replace Plaintiffs' and other Class members' defective compressors or related parts and components when they failed during the Warranty period.

119.   Specifically, despite the terms of the express warranty, LG has failed to provide adequate repairs, replacements, or refunds when the Refrigerators prematurely fail due to the Compressor Defect manifesting within the one-year refrigerator warranty period. Instead, LG routinely provides inadequate repairs that result in subsequent failures and warrant multiple additional repairs and result in expenses to consumers.

120.   Accordingly, LG's limited remedy of repair or replacement is an inadequate remedy under the terms of the warranty such that the warranty fails of its essential purpose.

121.   LG's attempt to disclaim or limit its express warranties vis à-vis consumers is unconscionable and unenforceable under the circumstances here. Defendant knew or should have known that the Class Refrigerators are plagued by a uniform Compressor Defect; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the Refrigerators; and the limited remedies in Defendant's warranty unreasonably favors Defendant and fail Plaintiffs' reasonable expectations concerning product performance.

122.    Specifically, LG's warranty limitations are unenforceable because it knowingly sold a defective product without informing consumers about the defect. Because LG had knowledge of the Compressor Defect and failed to disclose it prior to selling Refrigerators to Plaintiffs and Class members, and because the remedy provided for under the terms of LG's warranty is inadequate and fails of its essential purpose, the one-year durational warranty limitation (and all other limitations) is unenforceable because it is both procedurally and substantively unconscionable. Accordingly, consumers who have experienced Refrigerator failures due to the Compressor Defect should not be precluded from bringing warranty claims under the LG warranty.

123.    Any purported warranty limitations excluding or limiting (a) labor and costs of labor and (b) incidental and consequential damages, are also procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302.

124.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of LG's conduct described herein.

125.    LG was provided notice of these issues by complaints lodged by consumers directly over the phone and through LG's website, on internet consumer complaint boards, and elsewhere—which appliance manufacturers like LG

routinely monitor—before or within a reasonable amount of time after the allegations of the Compressor Defect became public.

126.    Demand letters were also sent on behalf of Plaintiff Saber (on June 22, 2016) and the Oney Plaintiffs as set forth below. LG has received adequate notice of its breaches and opportunity to cure, but has failed to do so.

127.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including but not limited to repair and replacement costs, monetary losses associated with food spoilation, damage to other property, and loss of use of or access to refrigeration systems.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, the State Sub-Classes)

128.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

129.    This claim is pled on behalf of Plaintiffs and the Nationwide Class, or, in the alternative, on behalf of the New Jersey, New York, Texas, and Utah Classes under the laws of those states.

130.    LG is a "merchant" and the Class Refrigerators are "goods" as defined under the U.C.C.

131.    Pursuant to U.C.C. § 2-314, an implied warranty that goods are merchantable is implied in every contract for a sale of goods. LG impliedly warranted that the Class Refrigerators were of a merchantable quality.

132.    LG breached the implied warranty of merchantability because the Class Refrigerators were and are not of a merchantable quality due to the Compressor Defect, and the associated problems and failures in the Refrigerators caused by the Compressor Defect.

133.    Plaintiffs' and Class members' interactions with LG suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and LG, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third-party beneficiaries of contracts between LG and its authorized dealers, and specifically, of LG's implied warranties. LG's dealers and distributors are intermediaries between LG and consumers. These intermediaries sell Class Refrigerators to consumers and are not, themselves, consumers of Class Refrigerators, and therefore have no rights against LG with respect to Plaintiffs' and Class members' purchases of Class Refrigerators. LG's warranties were designed for the benefit of consumers who purchase(d) Class Refrigerators.

134.    As set forth herein, LG's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and

unenforceable here. Specifically, LG's warranty limitations—including any purported limitations on implied warranties—are unenforceable because LG knowingly sold a defective product without informing consumers about the defect.

135.   Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of LG's conduct described herein.

136.   LG was provided notice of these issues through complaints lodged by consumers directly to it over the phone and through LG's website, on internet consumer complaint boards, and elsewhere—which appliance manufacturers like LG routinely monitor—before or within a reasonable amount of time after the allegations of the Compressor Defect became public.

137.   Demand letters were also sent on behalf of Plaintiff Saber (on June 22, 2017) and the Oney Plaintiffs as set forth below. LG has received adequate notice of its breaches and opportunity to cure, but has failed to do so.

138.   As a direct and proximate result of the breach of implied warranties of merchantability, Plaintiffs and Class members were injured and are entitled to damages.

## COUNT IV
## UNJUST ENRICHMENT (PLEADING IN THE ALTERNATIVE)
### (On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, the State Sub-Classes)

139.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

140.   This claim is pled on behalf of Plaintiffs and the Nationwide Class, or, in the alternative, on behalf of the New Jersey, New York, Texas, and Utah Classes under the laws of those states.

141.   As the intended and expected result of its conscious wrongdoing, LG has profited and benefited from Plaintiffs' and Class members' purchase of Class Refrigerators containing the Compressor Defect.

142.   LG has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of LG's misconduct alleged herein, Plaintiffs and the Class were not receiving refrigerators of the quality, nature, fitness, or value that had been represented by LG, and that a reasonable consumer would expect.

143.   LG has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of defective Class Refrigerators and by withholding benefits from Plaintiffs and the Class at the expense of these parties.

144.   Equity and good conscience militate against permitting LG to retain these profits and benefits, and LG should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## COUNT V
### VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT
### N.J. STAT. ANN. §§ 56:8-1 *et seq*. ("NJCFA")
### (On Behalf of Plaintiff Montayne and the Nationwide Class,
### or Alternatively, the New Jersey Class)

145.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

146.   This claim is brought on behalf of Plaintiff Montanye and the Nationwide Class, or alternatively, the New Jersey Class.

147.   The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. STAT. ANN. § 56:8-2.

148.   Plaintiff and members of the Class are consumers who purchased LG Refrigerators for personal, family or household use.

149.   Defendant did not fully and truthfully disclose to and purposefully concealed from its customers the true nature of the Compressor Defect in the Class

Refrigerators. As a result, Plaintiff and the other Class members were fraudulently induced to purchasing the Refrigerators.

150.   Defendant intended that Plaintiff and all Class members rely on the acts of concealment and omission by LG, so that they would purchase the Refrigerators.

151.   Defendant's conduct caused Plaintiff and New Jersey Class members to suffer an ascertainable loss.  In addition to direct monetary losses, Plaintiff and Class members have suffered an ascertainable loss by receiving less than what was promised.

152.   A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff Montayne and the Class. Had the true information concerning the Compressor Defect been disclosed, Plaintiff and members of the Class would not have purchased Refrigerators or would have paid less for them.

## COUNT VI
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
#### N.Y. GEN. BUS. LAW § 349
#### (On Behalf of Plaintiff Saber and the New York Class)

153.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

154.   This claim is bought on behalf of Plaintiff Saber and the New York Class.

155. New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

156. In the course of LG's business, it willfully failed to disclose and actively concealed the Compressor Defect in Class Refrigerators as described above.

157. Accordingly, LG engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in N.Y. GEN. BUS. LAW § 349, including representing that Class Refrigerators have characteristics, uses, benefits, and qualities which they do not have; representing that Class Refrigerators are of a particular standard and quality when they are not; advertising Class Refrigerators with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

158. LG's actions as set forth above occurred in the conduct of trade or commerce.

159. LG's deception relates to widely consumed consumer products and therefore affects the public interest. LG's unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

160. LG's conduct proximately caused injuries to Plaintiff and the other New York Class members.

161.    Plaintiff Saber and the other New York Class members have suffered ascertainable loss as a result of LG's conduct in that Plaintiff and the other New York Class members overpaid for their Class Refrigerators and did not receive the benefit of their bargain, paid out of pocket costs relating to the Compressor Defect, and their Class Refrigerators have suffered a diminution in value (to the extent they are even operable). These injuries are the direct and natural consequence of LG's misrepresentations and omissions.

## COUNT VII
### VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES Act
### TEX. BUS. & COM. CODE §§ 17.41, *et seq.* ("TDTPA")
### (On Behalf of the Oney Plaintiffs and the Texas Class)

162.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

163.    This claim is brought on behalf of Oney Plaintiffs and the Texas Class.

164.    The TDTPA provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.

165.    Plaintiffs and LG are "persons" within the meaning of the TDTPA. *See* TEX. BUS. & COM. CODE § 17.45(3).

166.    The Class Refrigerators are "goods" under the TDTPA. *See id.* § 17.45(1).

167.   Plaintiffs and the other Texas Class members are "consumers" as defined in the TDTPA. *See id.* § 17.45(4).

168.   LG has at all relevant times engaged in "trade" and "commerce" as defined under TDTPA § 17.45(6), by advertising, offering for sale, selling, leasing, and/or distributing the Class Refrigerators in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

169.   LG participated in misleading, false or deceptive acts that violated the TDTPA. By fraudulently selling Class Refrigerators with the concealed and undisclosed Compressor Defect as described herein, LG engaged in deceptive business practices prohibited by the TDTPA.

170.   In the course of its business, LG incorporated faulty compressors and/or related components in Class Refrigerators that cause the Refrigerators to fail over time, resulting in the compressors losing all functionality. LG concealed and omitted this Compressor Defect and otherwise engaged in activities with the tendency or capacity to deceive. LG also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission, in connection with the sale of Class Refrigerators containing the Compressor Defect.

171.   LG has known of the Compressor Defect in Class Refrigerators from thousands of complaints and communications by Class members, but continued

and continues to conceal the Compressor Defect in order to make sales of Class Refrigerators.

172. By willfully failing to disclose and actively concealing the Compressor Defect, by marketing Class Refrigerators as reliable and of high quality, and by presenting itself as a reputable manufacturer that stood by its products after they were sold or leased when it in fact does not, LG engaged in unfair and deceptive business practices in violation of the TDTPA.

173. LG's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and members of the Texas Class, about the quality, workmanship, performance, and true value of the defective Class Refrigerators.

174. LG intentionally and knowingly omitted material facts regarding the Class Refrigerators with intent to mislead Plaintiffs and the Texas Class.

175. LG's conduct was and is violative of the TDTPA in the following ways:

    a.    representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

      b.      representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

      c.      advertising goods or services with intent not to sell them as advertised; and

      d.      failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

TEX. BUS. & COM. CODE § 17.46(b)(5), (7), (9), (24).

176. LG owed Plaintiffs and the Texas Class a duty to disclose the Compressor Defect in Class Refrigerators and the true value of Class Refrigerators because LG:

      a.      possesses exclusive knowledge that its manufacturing process entailed the inclusion of defective compressors or other hardware;

      b.      intentionally concealed the foregoing from Plaintiffs and the Texas Class; and/or

c.    made incomplete, false or misleading representations about the characteristics, quality, workmanship, reliability, value, efficiency, and performance of Class Refrigerators while purposefully withholding material facts from Plaintiffs and the Texas Class that contradicted these representations.

177.   Because the Oney Plaintiffs and the Texas Class overpaid for Class Refrigerators due to LG's conduct described herein and because the Compressor Defect in Class Refrigerators has caused Plaintiffs and members of the Texas Class to incur out-of-pocket expenses, they have suffered ascertainable loss as a direct and proximate result of LG's deceptive and unfair acts and practices in violation of the TDTPA.

178.   The Oney Plaintiffs provided notice of the Compressor Defect by sending a demand letter to LG on August 7, 2017 pursuant to TEX. BUS. & COM. CODE § 17.505.

## COUNT VIII
## VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT
### (UTAH CODE ANN. § 13-11-1, *et seq*.) ("CSPA")
### (On Behalf of Plaintiff Haggard and the Utah Class)

179.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

180.   Plaintiff Haggard brings this Count on behalf of himself and the Utah Class.

181.   LG is a "supplier" under UTAH CODE ANN. § 13-11-3.

182.   Plaintiff and Utah Class members are "persons" under UTAH CODE ANN. § 13-11-3.

183.   The sale of the Class Refrigerators to Plaintiff and Utah Class members was a "consumer transaction" within the meaning of UTAH CODE ANN. § 13-11-3.

184.   The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under UTAH CODE ANN. § 13-11-4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." UTAH CODE ANN. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. UTAH CODE ANN. § 13-11-5.

185.   In the course of its business, LG willfully failed to disclose and actively concealed the Compressor Defect discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. LG also engaged in unlawful trade practices by employing deception, deceptive acts or practices,

fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Refrigerators.

186. LG knew it had installed defective compressors in the Class Refrigerators, and LG knew that the Class Refrigerators were equipped with the Compressor Defect, but concealed that information.

187. By failing to disclose that the Class Refrigerators were equipped with the Compressor Defect, by marketing its Refrigerators as reliable, and of high quality and by presenting itself as a reputable manufacturer that valued safety and stood behind its Refrigerators after they were sold, LG engaged in deceptive business practices in violation of the Utah CSPA.

188. LG's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Utah Class members, about the true performance of the Class Refrigerators, the quality of the LG brand, and the true value of the Class Refrigerators.

189. LG intentionally and knowingly failed to disclose material facts regarding the Class Refrigerators with an intent to mislead Plaintiff and the Utah Class.

190. LG knew or should have known that its conduct violated the Utah CSPA.

191.  LG owed Plaintiff and the Utah Class a duty to disclose the Compressor Defect and the true performance and reliability of the Class Refrigerators, because LG:

    a.    possessed exclusive knowledge that its manufacturing process entailed the inclusion of defective compressors or other hardware;

    b.    intentionally concealed the foregoing from Plaintiff and the Utah Class; and/or

    c.    made incomplete representations about the reliability and performance of the Class Refrigerators generally, and the Compressor Defect in particular, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

192.  Because LG fraudulently concealed the Compressor Defect and the true performance of the Class Refrigerators, the value of the Class Refrigerators has greatly diminished (to the extent they are even operable).

193.  LG's fraudulent concealment of the true performance of Class Refrigerators was material to Plaintiff and the Utah Class. A Refrigerator made by a reputable manufacturer of reliable, high-quality, high-performing devices is worth more than an otherwise comparable Refrigerator made by a disreputable

manufacturer of unreliable, low-quality, defective devices that conceals defects rather than promptly remedying them.

194.   Plaintiff and the Utah Class suffered ascertainable loss caused by LG's concealment of and failure to disclose material information. Class members who purchased the Class Refrigerators either would have paid less for their Refrigerators or would not have purchased them at all but for LG's material omissions and violations of the Utah CSPA.

195.   LG had an ongoing duty to all LG customers to refrain from unfair and deceptive practices under the Utah CSPA. All owners of Class Refrigerators suffered ascertainable losses in the form of, *inter alia*, the diminished value of their Refrigerators as a result of LG's deceptive and unfair acts and practices made in the course of its business.

196.   LG's violations present a continuing risk to Plaintiff as well as to the general public. LG's unlawful acts and practices complained of herein affect the public interest.

197.   As a direct and proximate result of LG's violations of the Utah CSPA, Plaintiff Haggard and the Utah Class have suffered injury-in-fact and/or actual damage. Pursuant to UTAH CODE ANN. § 13-11-4, Plaintiff Haggard and the Utah Class seek monetary relief against LG measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the

amount of $2,000 for Plaintiff and for each Utah Class member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and similarly situated members of the Classes, respectfully requests that this Court:

(a)    Determine that this action is a proper class action, certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Class Counsel;

(b)    Award all actual, general, special, incidental, statutory, treble, punitive and consequential damages to which Plaintiffs and Class members are entitled;

(c)    Award pre-judgment and post-judgment interest on such monetary relief;

(d)    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Refrigerators and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Compressor Defect;

(e)    Award Plaintiffs and Class members restitutionary or other equitable relief;

(f)    Award Plaintiffs and Class members their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(g)    Award such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs respectfully demand a jury trial for all claims so triable.


Dated:  August 8, 2017

Respectfully submitted,

By: _____

Benjamin F. Johns
Alison G. Gushue
Andrew W. Ferich
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633
Email:  bfj@chimicles.com
Email:  arg@chimicles.com
Email:  awf@chimicles.com

*Counsel for Plaintiffs and
the Proposed Class*